IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

COURTNEY BRADLEY,                )
Administratrix of the ESTATE OF  )
PAUL C. ALLEN, deceased,         )        Civil Action No: 2:23-cv-1670-MRH-CBB
                                 )
            Plaintiff,           )        Mark R. Hornak
                                 )        Chief United States District Judge
      vs.                        )
                                 )
ALLEGHENY COUNTY d/b/a           )        Christopher B. Brown
ALLEGHENY COUNTY JAIL,           )        United States Magistrate Judge
ORLANDO L. HARPER, LAURA         )
WILLIAMS, and ALLEGHENY          )
HEALTH NETWORK,                  )
                                 )
            Defendants.          )

**REPORT AND RECOMMENDATION**
**ON MOTION TO DISMISS ECF No. 20**

**Christopher B. Brown, United States Magistrate Judge**

I.    **Recommendation**

    This civil action was initiated by Plaintiff Courtney Bradley ("Plaintiff") as

administratrix of the estate of her late father, Paul C. Allen ("Allen"), who died in

2021 while incarcerated at Allegheny County Jail ("ACJ") located in Pittsburgh,

Pennsylvania.  Plaintiff alleges the events surrounding her father's death violated

his constitutional rights and she brings several claims pursuant to 42 U.S.C. § 1983

against Defendants Allegheny County (the "County"), former ACJ Warden Orlando

L. Harper ("Warden Harper"), and former ACJ Chief Deputy Warden of Healthcare

Services Laura Williams ("Deputy Warden Williams") (collectively "County

Defendants") (Counts I-III).  Plaintiff also brings two state law claims, a survival

1

action and a wrongful death claim against the ACJ's medical provider Allegheny Health Network ("Medical Defendants") (Counts IV-V).[1]

The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

Presently before the Court is County Defendants' motion to dismiss Counts I-III for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and alternatively for dismissal under Fed. R. Civ. P. 12(e) for a more definite statement. ECF No. 20. The motion is fully briefed and ripe for disposition.[2] ECF Nos. 21, 25.

For the following reasons, it is respectfully recommended that the Court grant in part and deny in part County Defendants' motion to dismiss Counts I-III at ECF No. 20 as follows:

1.    The Court grant County Defendants' motion to dismiss and dismiss with prejudice any official capacity claims that Plaintiff purports to bring against Warden Harper and Deputy Warden Williams;

2.    The Court grant County Defendants' motion to dismiss and dismiss without prejudice any claims that Warden Harper and Deputy Warden Williams "personally participated" in any constitutional violation; and

3.    The Court deny County Defendants' motion to dismiss in all other

---

[1]    Medical Defendants did not file a motion to dismiss but rather filed an answer to Plaintiff's amended complaint. *See* ECF No. 22.

[2]    This matter was originally assigned to Magistrate Judge Cynthia Reed Eddy. Upon Judge Eddy's retirement, the matter was reassigned on April 23, 2024, to Chief Magistrate Judge Richard A. Lanzillo. On July 3, 2024, pursuant to Administrative Order 2024-07, the matter was reassigned to this member of the Court.

respects.

It is further respectfully recommended that the Court deny County Defendants' motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## II.    Report

### a.    Factual and Procedural Background[3]

On July 8, 2021, Allen was arrested and incarcerated at the ACJ. ECF No. 19 at ¶ 18.  Once Allen arrived at the ACJ, he underwent a medical screening exam which noted he had chronic asthma. *Id.* at ¶ 19.  Later, Allen was released from the ACJ. *Id.* at ¶ 21.

After Allen was released from the ACJ, on August 31, 2021, he was hospitalized at University of Pittsburgh Medical Center - East ("UPMC East") for asthma exacerbation. *Id.* at ¶ 29.

On September 10, 2021, Allen was arrested again and reincarcerated at the ACJ. *Id.* at ¶ 22.  When he arrived at the jail, he had a prescription Advair inhaler in his possession. *Id.* at ¶ 24.  Allen again underwent a medical screening exam at the ACJ which identified asthma as one of his chronic conditions and noted his recent August 31, 2021 hospitalization at UPMC East for asthma exacerbation. *Id.* at ¶ 25.  That same day, the ACJ received Allen's medical records from UPMC East which documented his history of prior hospitalizations, listed asthma as a chronic condition and listed his prescribed medications including two inhalers. *Id.* at ¶¶ 28,

---

[3]    The following allegations are taken from Plaintiff's amended complaint and are accepted as true with all reasonable inferences drawn in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008).

30.

Within a week of the intake screening, Allen began to consistently see the ACJ staff for a variety of medical events related to his asthma. This included an evaluation of him on September 17, 2021 after he fell "because of asthma" and sustained a bump on his head. *Id.* at ¶¶ 31, 33.

It also included a visit to the ACJ medical two days later for asthma exacerbation. *Id.* at ¶ 33. Allen advised the ACJ staff he typically used two inhalers, Ventolin and Advair, but had only been provided Ventolin by the ACJ staff. *Id.* Allen also reported he used the Ventolin inhaler about eight times a day with no relief and noted he had been wheezing and had difficulty breathing. *Id.* The ACJ staff administered Allen medications and advised they would follow-up with the pharmacy regarding a prescription for an Advair inhaler. *Id.* at ¶ 34. Plaintiff alleges no follow-up occurred. *Id.*

On September 28, 2021, Allen was again seen for acute shortness of breath, rapid breathing, and audible wheezing which worsened despite use of his Ventolin inhaler. *Id.* at ¶¶ 37, 39. Allen was diagnosed with asthma/COPD exacerbation and CAD/cardiomyopathy, administered medications, and monitored at the ACJ Medical Housing Unit for "at least 24 hours" and with a note to send Allen "to ER if deteriorates clinically." *Id.* at ¶¶ 41–42. That same day the ACJ staff also ordered a nebulizer treatment. *Id.* at ¶ 44.

Two days later, Allen continued to experience COPD exacerbation and medical personnel ordered a chest x-ray. *Id.* at ¶ 45. Plaintiff alleges that no chest

4

x-ray was ever completed. *Id*.

On October 1, 4, and 7, 2021, Allen was again evaluated, and the medical staff planned to continue his current prescriptions and noted he was stable and recovering from his "acute exacerbation." *Id*. at ¶¶ 46–48.

On October 9, 2021, Allen was evaluated for respiratory distress and was found to be hypoxemic, as his oxygen levels were at 84%, tachypneic as he had rapid and shallow breathing, and hypotensive, as his blood pressure could not be determined. *Id*. at ¶ 49. Allen reported shortness of breath and that he had used his Ventolin inhaler repeatedly that day without relief. *Id*. at ¶¶ 52–53. He had difficulty breathing, was wheezing, and his fingertips were bluish. *Id*. at ¶ 54. Once again, Allen was administered medications but remained tachypneic and hypoxemic. *Id*. at ¶¶ 55, 57. Plaintiff alleges that Allen had gone thirty days without his Advair inhaler and the prescription for one was canceled. *Id*. at ¶ 50.

Later that same day Allen was found slumped over in a chair, holding a nebulizer down at his side, and unresponsive. *Id*. at ¶ 58. The ACJ staff called 911 and initiated CPR. *Id*. at ¶ 59. Allen was then transported to UPMC Mercy Hospital and pronounced dead. *Id*. at ¶¶ 61–62. An autopsy revealed that his cause of death was bronchial asthma. *Id*. at ¶ 63.

Plaintiff further refers to a 2022 Allegheny County Jail Technician Assistance Report (the "Report") authored by a team of professionals from NCCHC Resources, Inc., the consulting arm of the National Commission on Correctional Health Care. *Id*. at ¶ 80. The Report independently reviewed the in-custody deaths

at the ACJ between 2017 and 2022, identified issues in the ACJ's medical practices and procedures, and provided recommendations for the same. *See* ECF No. 19-1. The Report found "areas lacking in consistency in treatment and follow-up" for individuals with chronic conditions. *Id*. at p. 46. The Report recommended that the ACJ "implement a criterion-based chronic care housing unit for those individuals who are more medically fragile and staff it with a registered nurse on day shift Monday through Friday" and to review "what medications can be kept on-person and how the medication is provided." ECF No. 19 at ¶ 84. The Report also recommended that the ACJ make changes to monitor inmates' active medication list. *Id*. at ¶ 85. Plaintiff also highlights that the authors of the Report interviewed Warden Harper as part of their review. *Id*. at ¶ 90.

Plaintiff also alleges that five other inmates with chronic conditions died while in the custody of the ACJ. Specifically, Plaintiff alleges that: (1) Anthony Talotta died on September 21, 2022 after failing to receive medical treatment and medication for a "treatable and preventable" wound infection; (2) Martin Bucek died on July 3, 2021 after he failed to receive proper medical attention for his known suicidal ideologies; (3) Frank Smart died on January 5, 2015 after he failed to receive required medications for his known seizure condition; (4) Clarence Jewett Jr. died on December 26, 2014 after he failed to receive necessary medication related to peritonitis and seizures; and (5) Timothy Meyers died on May 7, 2001 after he failed to receive medications for his known seizure condition. ECF No. 19 at ¶¶ 79(a)–(e).

There are five counts in the amended complaint. At Counts I-III, Plaintiff alleges violations of 42 U.S.C. § 1983 against each of the County Defendants. More specifically, Plaintiff alleges that the County, Warden Harper, and Deputy Warden Williams maintained numerous defective policies and procedures that were deliberately indifferent to inmates' health and violated Allen's right to adequate medical care under the Fourth, Eighth and Fourteenth Amendments.[4] *Id.* at ¶ 92. County Defendants move to dismiss to the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim as it relates to them and alternatively move to dismiss the amended complaint under Fed. R. Civ. P. 12(e) for a more definite statement. ECF No. 20.

### b. Standard of Review

The applicable inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. Under Fed. R. Civ. P. 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed where it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A

---

[4] While it appears that Allen was a pretrial detainee and thus afforded constitutional protection from deliberate indifference to his serious medical needs under the Due Process Clause of the Fourteenth Amendment, *see Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003), because Defendants do not move to dismiss those claims, no recommendation is made on this point.

complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Yet the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . .

Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).  When considering a Fed. R. Civ. P. 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents integral to or explicitly relied on in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 256 n.5 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### c.  Discussion

Plaintiff alleges that the County Defendants violated Allen's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. This statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under section 1983, a plaintiff must show a "violation of a right secured by the Constitution and laws of the United States[,]" and must "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no dispute that County Defendants at all times were acting under color of state law.

County Defendants move to dismiss each claim. Each argument is discussed seriatim.

### i. Official Capacity Claims

As a preliminary matter, the County Defendants argue that the "official capacity" claims made against the individual Defendants Warden Harper and Deputy Warden Williams must be dismissed as redundant. ECF No. 21 at 17. Plaintiff does not appear to squarely respond to this argument but asserts that the "Eleventh Amendment does not bar individual capacity claims[.]" ECF No. 25 at 7. The amended complaint does not appear to explicitly assert "official capacity"

claims against the individual Defendants. Despite Plaintiff's response, Eleventh
Amendment immunity generally applies only to state entities, as opposed to county
entities like the ACJ and their employees. *Febres v. Camden Bd. of Educ.*, 445 F.3d
227, 229 (3d Cir. 2006). Nevertheless, to the extent Plaintiff intended to bring
"official capacity" claims against Warden Harper and Deputy Warden Williams, it is
respectfully recommended that the Court dismiss these claims with prejudice as
duplicative of the claims against the County. *Kentucky v. Graham*, 473 U.S. 159,
166 (1985) ("As long as the government entity receives notice and an opportunity to
respond, an official-capacity suit is, in all respects other than name, to be treated as
a suit against the entity."); *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113,
131 (D.N.J. 2017) ("where claims against an officer in his official capacity are
duplicative of claims against the municipality, those claims are properly dismissed
as redundant.") (collecting cases).

### ii. Supervisor Liability – Warden Harper and Deputy Warden Williams

Plaintiff alleges that as supervisors at the ACJ, Warden Harper and Deputy
Warden Williams violated Allen's constitutional rights. There are two "general"
ways in which supervisor-defendants like Warden Harper and Deputy Warden
Williams may be liable under section 1983: (1) where the supervisor personally
participated in the constitutional violation, or (2) where the supervisor established a
policy, custom or practice that caused the harm. *A.M. ex rel. J.M.K. v. Luzerne Cnty.
Juv. Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

As for the first theory of liability, "a supervisor may be personally liable

under [section] 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

As for the second theory of liability, "[i]ndividual defendants who are policymakers may be liable under [section] 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Likewise, so-called "failure to" claims – "failure to train, failure to discipline, or . . . failure to supervise – are generally considered a subcategory of policy or practice liability." *Barkes v. First Correctional Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (citations omitted).

Each theory of liability is discussed in turn.

### 1. Supervisor Liability – Personal Involvement

First, Warden Harper and Deputy Warden Williams move to dismiss Plaintiff's Counts I and II as asserted against them and argue that Plaintiff has failed to state a claim for supervisory liability because "the Amended Complaint does not plead facts that [Warden] Harper [or Deputy Warden Williams] had personal involvement with Allen, personally directed anyone to violate Allen's rights, acquiesced in any supposed violation of Allen's rights, knew of any supposed violation of Allen's rights, or knew of Allen at all while he was jailed at the ACJ."

12

ECF No. 21 at 11.

It appears that Plaintiff concedes this point and is resting her claim upon "their knowledge of the deficient policies and procedures, training and customs in place at [the ACJ] at the time of Mr. Allen's confinement." ECF No. 25 at 7.  Given this concession, it is respectfully recommended that to the extent Warden Harper and Deputy Warden Williams move to dismiss Plaintiff's amended complaint for failing to state a claim under section 1983 based on their personal involvement in the alleged violations, that the Court grant the County Defendants' motion and dismiss those claims without prejudice.[5]

## 2. Supervisor Liability – Policy or Procedure

Next, Warden Harper and Deputy Warden Williams argue that Plaintiff has not adequately pleaded a policy or procedure that led to the deprivation of Allen's constitutional rights and that Allen was under regular medical care while in custody at the ACJ. *Id.* at 12.  Again, a supervisor can be liable for constitutional harms if the supervisor "maintained a policy, practice or custom which directly caused the constitutional harm," *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (cleaned up), which includes the "failure to adopt a practice." *Adger v. Coupe*, No. 21-1841, 2022 WL 777196, at *3 (3d Cir. Mar. 14, 2022) (unpublished) (citations omitted).  To state a supervisory liability policy, practice or custom claim,

> [t]he plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or

---

[5]    If discovery reveals evidence that Warden Harper or Deputy Warden Williams personally participated in the violation of Allen's constitutional rights, Plaintiff should be permitted leave to file a second amended complaint.

> procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk[,] and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Tp.*, 269 F.3d 205, 216 (3d Cir. 2001). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the 'identified deficiency' and the 'ultimate injury.'" *Brown*, 269 F.3d at 216 (cleaned up).

Plaintiff identifies specific policies that the ACJ lacks, and further alleges that Warden Harper and Deputy Warden Williams knew the policies were lacking and failed to change them. First, according to Plaintiff, the ACJ's medical program generally lacked adequate policies and practices which caused inmates with chronic medical conditions to receive inadequate medical care. In particular, Plaintiff alleges there was an absence of policies or practices (1) to ensure that an inmate received timely and proper medical attention when they have suffered a serious medical event such as an asthma attack; (2) requiring an inmate's prior medical record be accessed at the time of intake, medical screening process, or when it is made known that they may have an unmet medical need, including access to their prescribed medication; (3) requiring an inmate's prior or current medical record be accessed when they are receiving medical care at a clinic or infirmary; (4) to ensure

employees and medical staff were debriefed after critical incidents; (5) implementing interdisciplinary meetings to discuss inmates in need of medical care; (6) requiring an in-depth psychological autopsy be completed within thirty days after an inmate dies while in the ACJ's custody; and (7) to ensure employees were properly and adequately staffed on medical/psychiatric housing units. ECF No. 19 at ¶¶ 98(a)-(t).

Second, Plaintiff further alleges that Warden Harper was responsible for developing and implementing policies regarding all aspects of the ACJ's operation, including the "nurses who cared for inmates in the medical unit." *Id*. at ¶ 5. Likewise, Plaintiff alleges that Deputy Warden Williams was responsible for developing and implementing policies regarding all aspects of the ACJ's medical services. *Id*. at ¶ 6.

Third, Plaintiff maintains that Warden Harper and Deputy Warden Williams knew of the deficiencies of the medical department because there was a pattern of similar constitutional violations at the ACJ. Plaintiff identifies five other individuals who died at the ACJ between 2001 and 2022 for allegedly not receiving proper medical attention and argues this supports her allegation that the ACJ had a history of failing to provide medical attention or necessary medications to inmates with chronic conditions. Plaintiff further refers to the Report which independently reviewed the in-custody deaths at the ACJ between 2017 and 2022 and identified several deficient policies including a lack of consistency for treatment and follow-up for inmates with chronic conditions, including changes to monitor an inmate's active

15

medication list and a policy review of what medications were permitted to be kept on-person and how the medication is provided. ECF No. 19 at ¶¶ 84-86.  Plaintiff maintains that County Defendants failed to correct any deficiencies in policies providing medical care to those with chronic medical conditions. *Id*. at ¶ 87.

These facts sufficiently state a claim for supervisor liability under the policy, practice or custom theory of liability.  Plaintiff identified both Warden Harper and Deputy Warden Williams as responsible for enacting policies, including those related to the healthcare of the ACJ inmates.  Plaintiff further identified several deficient policies concerning providing the ACJ inmates with chronic health conditions with timely and proper medical attention. *See* ECF No. 19 at ¶¶ 98(a)-(t).

Plaintiff has also adequately pleaded with enough factual specificity that discovery will likely reveal this custom of not providing the ACJ inmates with chronic health conditions with timely and proper medical attention created an unreasonable risk of injury to Allen.  Plaintiff alleges, *inter alia*, that the ACJ's failure to provide timely and proper medical attention, failure of the ACJ to access Allen's medical records, failure to provide access to prescribed medication, failure to communicate the need for medical care with staff and the inmate, and failure to provide adequate staffing on medical units which created an unreasonable risk of harm to Allen and, according to Plaintiff, ultimately led to Allen's death.

Likewise, Plaintiff has adequately pleaded facts tending to show that Warden Harper and Deputy Warden Williams had knowledge of these risks, considering the several deaths that allegedly occurred because of the ACJ's history of not providing

16

inmates with chronic conditions with proper medical attention or necessary medications. The Report further outlines the ACJ's policy shortcomings with respect to the medical attention of inmates with chronic conditions, and also suggests several changes that the ACJ should implement, which indicates these Defendants had at least some knowledge of the lack of adequate medical care for inmates who suffered from chronic medical conditions at the ACJ.

The facts as alleged are enough to raise a reasonable inference that discovery will reveal that Warden Harper and Deputy Warden Williams were indifferent to the risk of harm and the causation element, as it is plausible that implementation of these policies, in whole or in part, would have prevented Allen's death. At this juncture, Plaintiff has adequately alleged that Warden Harper and Deputy Warden Williams were aware of omissions in the ACJ's medical care program pertaining to inmates with chronic health conditions and disregarded its inadequate policies and practices. *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003). It is therefore respectfully recommended that the Court deny County Defendants' motion to dismiss in this respect.

### iii. Municipal Liability under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*")

Next, the County argues that Plaintiff's municipal liability claim under *Monell* fails to state a claim because she does not allege facts that the County "did not provide medical care for Allen or that it prevented him from receiving or obstructed his medical care while he was in the ACJ[,]" and Allen was under "regular medical care while confined at the ACJ." ECF No. 21 at 14.

17

Like supervisors, a municipality, such as Allegheny County, cannot be held liable under section 1983 on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 691. Rather, a plaintiff must show that a local government's policy or custom inflicted the constitutional injury alleged. *Id.* at 694. The Third Circuit has recognized two ways for a *Monell* claim to proceed: a plaintiff may either show that (1) "an unconstitutional policy or custom of the municipality led to his or her injuries," or (2) that his injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (cleaned up).

The County argues that because Allen received regular medical care, its conduct does not rise to the level of deliberate indifference. ECF No. 21 at 14-17. Providing Allen with regular medical care while he was incarcerated "is not a *per se* defense" to a finding of deliberate indifference "and it does not necessarily mean that [plaintiff] was receiving the kind of care required by the symptoms presented." *Bucek v. Allegheny Cnty.*, No. 2:22-CV-940-NR, 2023 WL 4594840, at *3 n.3 (W.D. Pa. July 18, 2023). "[T]here are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (cleaned up). Plaintiff alleges that the County failed to enact policies to give adequate medical care to inmates with chronic health conditions, knowing that their policies were insufficient because of

18

the several deaths of other inmates with chronic health conditions prior to Allen's death and the Report which set forth several policy shortcomings with respect to the treatment that inmates with chronic health conditions received as outlined above. Therefore, Plaintiff has likewise stated a *Monell* claim against the County, and it is respectfully recommended that the Court deny County Defendants' motion to dismiss in this respect.

### iv.  Failure to Train

Next, County Defendants argue that there are insufficient allegations to support Plaintiff's "failure to train" claim because the allegations do not support a finding of deliberate indifference. ECF No. 21 at 18-19.  They argue that "[n]o facts place any of the Defendants on notice that [the] ACJ inmates with asthma were not being properly treated [because of] deliberately indifferent training by the County Defendants." *Id*. at 19.

Where it is alleged that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (cleaned up).  Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).  In such cases,

> [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.  Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious

19

> conduct by employees may establish the conscious disregard for the consequences of their action – the "deliberate indifference" – necessary to trigger municipal liability.

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (cleaned up).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

In the absence of a pattern of similar constitutional violations, in some situations, the need for training can be "so obvious" that a failure to train can be characterized as deliberate indifference to constitutional rights "even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (cleaned up).  This so-called "single-incident" theory of liability for failure to train depends on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate  citizens' rights." *Board of County Com'rs of Bryan County, Okl.*, 520 U.S. at 409.

While Plaintiff does not indicate which theory she intends to bring her failure to train claims under, the Court will assume because of the inclusion of allegations in the amended complaint related to similar inmates who suffered from an alleged lack of medical attention that Plaintiff intends to proceed under the first theory of liability and not under a "single incident" theory of liability.  County Defendants seemingly attack Plaintiff's failure to train claim for not alleging sufficiently similar constitutional violations. ECF No. 21 at 19.

The allegations pleaded by Plaintiff suggests a pattern of similar violations

by the ACJ employees that would have placed the County Defendants on notice that
the employee training program at the ACJ with respect to medical attention of
inmates with chronic medical conditions was deficient.  Plaintiff alleges that the
County Defendants did not provide Allen with appropriate medical care by failing to
properly assess, treat and administer prescribed medication and failed to provide
proper monitoring as he was given treatment. ECF No. 19 at ¶¶ 82-91.

Although a close question, Plaintiff's failure to train claim should be
permitted to proceed to discovery.  Plaintiff has alleged other instances of the ACJ
inmates with chronic medical conditions being similarly treated and alleges the
scienter requirement through other inmates' deaths predating Allen's death and the
Report illustrating the ACJ policy deficiencies.  Whether those instances are in fact
similar to Allen's is not a question to decide at this procedural juncture.  Likewise,
whether there is other similar conduct related to the medical treatment of other
inmates is information solely within the possession of the County Defendants. *See
St. Clair v. Fayette Cnty. Prison*, No. CV 22-49, 2023 WL 5944116, at *6 (W.D. Pa.
June 15, 2023), *report and recommendation adopted*, No. CV 22-49, 2023 WL
5087486 (W.D. Pa. Aug. 9, 2023).  Therefore, it is respectfully recommended that
the Court deny County Defendants' motion to dismiss Plaintiff's failure to train
claim.

### v.  Motion for More Definite Pleading

Lastly, and separate from its arguments for dismissal of the section 1983
claims, County Defendants alternatively move for a more definite pleading under

Fed. R. Civ. P. 12(e) and argue that Plaintiff has not specifically identified conduct attributable to the County Defendants. ECF No. 21 at 20.

Fed. R. Civ. P. 12(e) provides that a party may move for a more definite statement of a pleading that "is so vague or ambiguous that the [responding] party cannot reasonably prepare a response." Because it is recommended that the Court deny most of the County Defendants motion to dismiss and the undersigned cannot independently determine anything in the amended complaint that prevents any of the parties from providing "a simple denial" as permitted by Fed. R. Civ. P. 8(b), as has been done by the Medical Defendants in their answer, *§ 1376 Motion for a More Definite Statement—Scope of Rule 12(e)*, 5C Fed. Prac. & Proc. Civ. § 1376 (3d ed.), it is therefore respectfully recommended that the Court summarily deny the County Defendants' motion for more definite pleading.

## III.   Conclusion

Based on the foregoing, it is respectfully recommended that the Court grant in part and deny in part the County Defendants' motion to dismiss ECF No. 20 as follows:

1. The Court grant County Defendants' motion to dismiss and dismiss with prejudice any official capacity claims that Plaintiffs purport to bring against Warden Harper and Deputy Warden Williams;

2. The Court grant County Defendants' motion to dismiss and dismiss without prejudice any claims that Warden Harper and Deputy Warden Williams "personally participated" in any constitutional violation; and

3.  The Court deny County Defendants' motion to dismiss in all other

respects.

It is further respectfully recommended that the Court deny County

Defendants' motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72, and the Local

Rules for Magistrates, the parties have until **November 19, 2024** to file objections

to this report and recommendation.  Unless otherwise ordered by the District Judge,

responses to objections are due fourteen days after the service of the objections.

Failure to file timely objections will constitute a waiver of any appellate rights.  *See*

*Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: November 5, 2024                        Respectfully submitted,

                                               s/ Christopher B. Brown
                                               United States Magistrate Judge


cc:    Honorable Mark R. Hornak
       Chief United States District Judge

       Attorneys of record
       *via electronic filing*

23